Gwendolyn Laverne LOONEY, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–74–384.

Court of Criminal Appeals of Oklahoma.

Nov. 19, 1974.

**728**

E. Melvin Porter, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Bill James, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant Gwendolyn Laverne Looney, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Oklahoma County, Case No. CRF–73–604 with the offense of Unlawful Distribution of a Controlled Dangerous Substance, LSD, in violation of 63 O.S.1971, § 2–401(B)(1). Her punishment was set at five (5) years imprisonment and a fine of One ($1.00) Dollar, and from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial, Agent Arthur Linville with the narcotics division of the Oklahoma Bureau of Investigation, testified that he went to a residence at 2120 N.W. 36th Street in Oklahoma City on the afternoon of February 27, 1973, with a confidential informant, followed by two other agents from the Bureau who provided his surveillance. Linville testified that he and the informant, Carol Jamison, went into the house where he met a man named Bobby Bridges. A few minutes later the defendant and an unidentified black male entered the house. According to Officer Linville, the defendant immediately walked up to him and asked if he was the person who wanted to buy some "acid." Agent Linville said that he told her he was interested and asked what kind it was. The defendant, according to the witness, told him it was purple blotter acid, $1.50 a ticket, and that it was pure LSD 25. Agent Linville testified that he then told her he would buy ten tabs and that the defendant withdrew from her purse a roll resembling a roll of theatre tickets without any printing on them, and tore off ten of the tickets.

The witness said that after he had received the contraband from her, another young man who was also in the room at the time, walked over to where the two were standing and asked to buy six tickets of the LSD and handed the defendant a five dollar bill and four one dollar bills, while Agent Linville handed her two ten dollar bills. At this time the defendant then gave the witness the five dollar bill she had received from the other buyer (Eddie Dear).

After the transaction was completed, Officer Linville testified that he and informant Jamison left with the tickets in his pocket. He said that he later turned the tickets over to the Bureau of Investigation lab for chemical analysis. The witness explained that during the buy he was wired for sound and was monitored by the two officers parked nearby, and that to his knowledge he was only in the house about ten minutes. On cross-examination, the

Agent explained that he had gone to the residence with the purpose of making a buy of some drugs, but that he did not know specifically who he would be contacting for the sale.

Next to testify for the State was Oklahoma Bureau of Investigation Agent Dick Wilkerson, who said that he had followed Agent Linville in another car and held him under surveillance during the drug sale on February 27, 1973. Officer Wilkerson explained that the purpose of surveillance is for the protection of the undercover agent and that Linville was equipped with a two-way radio. Wilkerson testified that Agent Linville entered the Bridges' apartment at 2:45 p. m. and stayed 13 minutes. He added that as Linville came out of the house he told the other agents, over the radio, that he was leaving, and that they followed him to his own house a few blocks away. At the Linville residence Officer Wilkerson testified that he was shown ten approximately one-inch squares of purple paper with stains on them, commonly known as purple blotter paper. He said that after Linville showed him the papers he then saw Linville put them into an evidence envelope. On cross-examination, Agent Wilkerson explained that he did not see Linville seal or sign the evidence when he placed it in the envelope, but that later, on the afternoon of the 27th, at 4:00 p. m. or 4:30 p. m., he saw Agent Linville place his initials on each ticket.

A forensic chemist with the Oklahoma Bureau of Investigation, Ann G. Reed, testified that she had examined the contents of the evidence envelope 73–1269 on December 12, 1973, and found that the purple blotter papers therein were stained with lysergic acid diethylamide, or LSD. Ms. Reed explained that when she opened the envelope it had already been sealed, opened and resealed. She testified that the contraband had previously been examined by Chief Forensic Chemist John McCullough, but that he was not able to appear in court so he had resealed the envelope and that

she had opened the resealed envelope and retested the specimens.

On recall testimony for the State, Agent Linville identified the evidence envelope marked as State's Exhibit #2, as the one in which he had placed the material he purchased from the defendant. He further testified that State's Exhibit # 1 (blotter tickets bearing his initials), were the ones he had purchased from the defendant. At this time the exhibits were entered into evidence and the State concluded its case.

The first witness appearing for the defense was Agent Kenneth Jacobsen who testified that he was employed by the Oklahoma State Bureau of Investigation on February 27, 1973, and had assisted in the surveillance of Agent Linville during his transaction with the defendant. Officer Jacobsen testified that he was unable to see the front of the residence on N.W. 36th and that he could not see anyone enter or leave the residence until Officer Linville left, driving west on 36th Street. He said that when Officer Linville left, he and Agent Wilkerson followed him to the Linville residence where they went inside. Jacobsen said that they talked, but that he himself did not see the material purchased from the defendant, nor did he see the other men looking at it.

Randall N. Powell testified that he had known the defendant for four or five years and that on February 27th he had run into her and accompanied her to the Bridges' apartment when she went there to visit a friend named "Bobby." He said that he went inside with her and met Bobby, and that at that time there was also present in the room another black male, and a white male and female. He testified that while he was talking to Bobby, he overheard the white female talking to the defendant about dope. He said the white woman said she and the white man had been waiting at the house since 1:00 p. m. to buy some LSD. Witness Powell testified that he heard the defendant say that she had something in her purse which she had been given at a party and that as she

withdrew some papers from an envelope in her purse, the white man grabbed the papers saying that this was just what they had been waiting to buy.

According to witness Powell, the white male, Agent Linville, offered to buy the papers from her and she refused. He then allegedly offered to trade her some "reefers" for the papers, but at this time she told him he could just have the papers. Powell said Linville said that he was going to pay for them anyway and thrust what appeared to be some money into the defendant's hand, and that he thought she had put the money into her purse. After this, the witness said that Linville had asked him if he knew of any big dope dealers in the black community; that if he did he would appreciate Powell getting in touch with him through Bobby or at a telephone number he gave him, because Linville was interested in the market. Witness Powell also testified that some time during the conversation two young white men had entered the house, but that he did not know them. On cross-examination, Powell reiterated that he did not see the blonde boy, Eddie Dear, talk with the defendant or buy anything from her. He said that he did see the boys talk with Bobby and leave after about five minutes.

A private scientific investigator, Bryan L. Tipton, testified that in his opinion it was possible for persons to be in possession of drugs without knowing exactly where they were. He said that after examining State's Exhibit # 1 that he could not testify to what the stain was without chemical tests. At this point the defense counsel introduced a stained man's necktie as defense Exhibit # 1, after the witness testified that without chemical analysis he would be unable to speculate on the nature of the stain.

Character witnesses, the Rev. Archie B. Smith and the Rev. Sampson Moore, testified that the defendant was a regular churchgoer at their church, that she had a good reputation in the community and that they had never heard of her being associated with drugs. A third character witness, Clifford Oliver Looney, father of the defendant, testified that to his knowledge his daughter had never used drugs or marijuana or brought the same into his house where she had lived until one month before the trial.

Finally, testifying in her own behalf, the defendant related her version of the events which transpired on February 27th. She explained that she had gone to the Oklahoma Bureau of Investigation at noon that day to meet a girlfriend who worked as a receptionist there to go to lunch. She said that after they went to lunch she ran into Randall Powell and that they drove around and talked, finally going to Bobby Bridges' apartment to visit him. She said that at the apartment a white girl who introduced herself as "Carol" started quizzing her about drugs and talking about LSD, asking if she had ever used purple blotter acid. The defendant said she explained that she never had used it, but that she might have some because she had been given some purple papers at a party in November, but that she did not know what they were.

The defendant said that she searched through her purse and found the envelope with the purple papers, which she showed to Carol and Agent Linville. She said that Linville grabbed the papers, offering to buy them. She said he kept on insisting that she sell him the papers or at least trade them, so she finally said that he could have them since she had been given them free and had no use for them. She added that she did not know it was LSD or think that it was and that she had never used or seen LSD before. The defendant said that after she gave him the papers he handed her a ten dollar bill and a five dollar bill and she took it because he was being so overbearing. The defendant said she remembered seeing two white teenage males talking with Bobby, but that she did not speak to either of them.

The last witness to appear was Agent Dick Wilkerson, called by the State on rebuttal, who testified that during the entire

transaction Officer Linville had in the house on N.W. 36th on February 27th, he was able to hear the conversations going on in the room through the transceiver attached to Linville. He testified to hearing a female voice ask Officer Linville, "Are you the one who wanted the acid?" (Tr 288), but added that he could not say for sure that it was the defendant's voice, just that it was the voice of a female.

█ In her sole contention of error, the defendant alleges that due to the improper argument and conduct of defendant's trial attorney, the defendant's rights were prejudiced and that she was denied a fair trial by an impartial jury as required by the Sixth and Fourteenth Amendments to the Constitution. In particular, the defendant refers to the repeated attempts by her trial attorney to stress to the all-white jury that the defendant is black and was therefore victimized by the society in which she lived and in her arrest.

An examination of the record reveals that during the trial and throughout the closing argument, counsel for defense did refer to the ethnic and racial background of the defendant and the social inequities visited upon her race which had produced an environmental condition of which she was victimized into the commission of the crime for which she stood charged. This was obviously a trial tactic of defense counsel, employed in a sincere effort calculated to cause the jury to be more lenient in the treatment of the defendant than any other racial or ethnic group.

We are of the opinion that counsel's tactics in this regard were successful. In Nachtrieb v. State, Okl.Cr., 513 P.2d 597, which dealt with a white male convicted for the same offense as the defendant in the instant case, who was sentenced to serve fifteen (15) years imprisonment and pay a fine of Five Thousand ($5,000.00) Dollars, this Court stated:

"Defendant's last proposition of error contends that the punishment was excessive. With this contention we also do not agree. Title 63 O.S.1971, § 2–401(B)(1) provides that a person who distributes or dispenses Lysergic Acid Diethylamide (LSD) is guilty of a felony and shall be sentenced to a term of imprisonment for not less than five (5) years nor more than twenty (20) years and a fine not more than $20,000.00. There are no facts or circumstances in the case at bar that show the jury was prejudiced against defendant or that defendant's sentence was so excessive as to shock the conscience of this Court. Roberts v. State, Okl.Cr., 473 P.2d 264. We, therefore, hold that the sentence is within the limits set by statute and is not excessive under the above standards. . . . ."

█ Further, counsel for the defendant on appeal cites no authority for his assignment of error, and after having examined the record and finding that the trial tactics did not prejudice the defendant, we follow the rule enunciated in Sandefur v. State, Okl.Cr., 461 P.2d 954 (1969):

"It is necessary for counsel for plaintiff in error not only to assert error, but to support his contentions by both argument and the citations of authorities. Where this is not done, and it is apparent that the defendant has been deprived of no fundamental rights, this court will not search the books for authorities to support the mere assertion that the trial court has erred."

Accordingly, for the reasons above stated, the judgment and sentence appealed from is affirmed.

BLISS, P. J., and BRETT, J., concur.